**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JANICE DUTCHER** and **STACY NEGLEY**, individually and on behalf of all other similarly situated individuals,<br><br>  Plaintiffs,<br><br>v.<br><br>**CRESCO LABS INC.** and **CRESCO LABS, LLC**,<br><br>  Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs JANICE DUTCHER and STACY NEGLEY ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants CRESCO LABS INC. and CRESCO LABS, LLC ("Cresco") and state as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 ("Rule 23") by Plaintiffs, individually and on behalf of all similarly situated persons employed by Cresco, arising from Cresco's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and Massachusetts wage-and-hour laws. Plaintiffs also bring Rule 23 breach of contract and unjust enrichment claims.

2.     Cresco cultivates, manufactures and sells cannabis and medical cannabis products in the United States.[1]

---

[1] Cannabis, also known as marijuana among other names, is a psychoactive drug from the Cannabis plant used primarily for medical and recreational purposes.

3.     Cresco currently operates three medical and adult-use cannabis cultivation and manufacturing centers and nine dispensary locations in Illinois; one medical cannabis cultivation and manufacturing center and three dispensary locations in Pennsylvania; one medical cannabis cultivation center and one dispensary location in Ohio; three cultivation centers, one processing facility and two distribution facilities in California; two cultivation centers and one manufacturing and dispensary location in Arizona; one processing center in Maryland; one medical cannabis cultivation center and four dispensary locations in New York; one cultivation center and dispensary in Massachusetts; one processing facility in Michigan; and 26 nicotine vape stores in Canada.

4.     Cresco employs non-exempt employees at its cultivation, manufacturing, and processing centers – including Cultivation Agents, Edibles Agents, Gardening Agents, Kitchen Agents, Manufacturing Agents, Packaging Agents and Processing Agents (the "Cultivation Employees") – who are responsible for onsite harvesting and maintenance of Cresco's cannabis gardens and for the preparation and execution of Cresco's cannabis products through the measuring, mixing, processing and packaging of product for sale at Cresco's dispensary locations.

5.     Cresco employed Plaintiffs as Cultivation Employees at its cultivation center and dispensary in Massachusetts.

6.     The similarly situated Cultivation Employees are and were employed by Cresco at its cultivation, manufacturing, and processing centers in Arizona, California, Illinois, Maryland, Massachusetts, Michigan, New York, Ohio and Pennsylvania.

7.     Due to the nature of its operations, Cresco required Plaintiffs and similarly situated employees to wear company-issued protective clothing and safety equipment during their work shifts in order to protect the cannabis and cannabis products from contamination and to comply

with federal and state governmental safety, health and food regulations and mandates.

8.      The company-issued protective clothing and safety equipment included protective shoes, scrubs, masks, hair nets, arm sleeves, and gloves ("the PPE").

9.      Cresco required Plaintiffs and similarly situated employees to change into ("don") the PPE before clocking in for their scheduled work shifts and required them to do so at the worksite.

10.     Similarly, Cresco required Plaintiffs and similarly situated employees to change out of ("doff") the PPE after clocking out for their scheduled work shifts and required them to do so at the worksite.

11.     The mandatory pre-shift and post-shift donning and doffing process is compensable because it was an integral and indispensable part of Plaintiffs' and similarly situated employees' principal work activities. Cresco required Plaintiffs and similarly situated employees to don and doff the PPE at the worksite and wear the PPE during their work shifts in order to promote a safer and more efficient harvesting and production process and to ensure compliance with federal and state governmental safety, health and food regulations and mandates. Plaintiffs and similarly situated employees could not have completed their assigned work tasks without wearing the PPE.

12.     Before obtaining and donning the PPE, Cresco required Plaintiffs and similarly situated employees to swipe a badge to enter the building, a function that primarily benefited Cresco by allowing Cresco to monitor access to the facility and the cannabis and cannabis products.

13.     For a portion of the relevant period, before obtaining and donning the PPE, Plaintiffs and similarly situated employees had to pass a mandatory health screening procedure upon entering the facility, which lasted between one to two minutes.

14.     The mandatory on-site pre-shift health screening procedure was required by Cresco

3

to ensure that the cultivation and production of cannabis and cannabis products was free of contamination, and thus, was necessarily tied to Plaintiffs' and the similarly situated employees' work of onsite harvesting and maintenance of Cresco's cannabis gardens and preparation and execution of Cresco's cannabis products.

15. Additionally, the on-site pre-shift health screening procedure was integral and indispensable to Plaintiffs' and the similarly situated employees' principal duties because it could not be eliminated without impairing their ability to safely harvest and produce contamination-free cannabis products.

16. After passing the mandatory health screening procedure, Plaintiffs and similarly situated employees had to travel throughout the facility to access the PPE, including walking up a flight of stairs, riding an elevator, and/or walking throughout the facility – a process that took another one to two minutes.

17. After traveling throughout the facility but before clocking in, Plaintiffs and similarly situated employees spent approximately 10 to 12 minutes each day walking to their lockers located in the hallway; opening their lockers; retrieving their protective shoes which were stored in their lockers; stowing their personal belongings in their lockers; walking from their lockers to a hallway clothing rack to retrieve their scrubs; walking from the hallway clothing rack to the changing room and waiting for a vacant changing room stall; donning their scrubs and protective shoes in the changing room; returning to their lockers to stow their personal clothing; walking from their lockers to their assigned work areas; and, finally, donning their masks, hair nets, arm sleeves, and gloves which were stored in bins near the work area.

18. Cresco required Plaintiffs and similarly situated employees to don the PPE prior to punching in and before the start of their scheduled work shifts so that they could report to their

4

assigned work areas promptly at their scheduled start times and with all the PPE on.

19.     Consequently, Plaintiffs and similarly situated employees had to arrive at the facility at least 12 to 16 minutes early to pass the mandatory health screening procedure and to complete the mandatory pre-shift donning process.

20.     Cresco allowed Plaintiffs and similarly situated employees to clock in up to five minutes early.

21.     However, it took Plaintiffs and similarly situated employees significantly longer than five minutes to complete the mandatory pre-shift donning process.

22.     Consequently, Plaintiffs and similarly situated employees had to initiate the pre-shift donning process *before* clocking in.

23.     Additionally, Cresco implemented and enforced policies causing the punch-in times for Plaintiffs and similarly situated employees to be rounded up to their scheduled start times.

24.     Consequently, even if Plaintiffs and similarly situated employees clocked in early, Cresco did not begin paying them until their scheduled start times.

25.     At the end of each shift and after clocking out, Plaintiffs and similarly situated employees spent approximately three to five minutes doffing their masks, hair nets, arm sleeves, and gloves; placing the items in a trash bin; walking to their lockers to retrieve their personal clothing; walking from their lockers to the changing room and waiting for a vacant changing room stall; doffing their scrubs and protective shoes and placing the scrubs in the changing room hamper; and, finally, walking back to their lockers to store their protective shoes and retrieve their personal belongings.

26.     These policies resulted in Plaintiffs and similarly situated employees not being paid for their mandatory pre-shift and post-shift donning and doffing activities.

27. Since Plaintiffs and similarly situated employees regularly worked 40 or more hours per week, these policies also deprived them of overtime pay.

28. The individuals Plaintiffs seek to represent in this action are current and former non-exempt employees who worked for Cresco and who were required to don and doff PPE at the worksite before and after their scheduled work shifts.

29. Cresco knew or could have easily determined how long it took Plaintiffs and similarly situated employees to complete the mandatory pre-shift and post-shift donning and doffing process, and Cresco could have easily paid Plaintiffs and the putative collective/class members for the mandatory pre-shift and post-shift work but deliberately chose not to.

## JURISDICTION

30. This Court has subject matter jurisdiction over Plaintiffs' FLSA claim under 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201 *et seq.*

31. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction…."

32. Moreover, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 class members, and at least some class members have a different citizenship than Cresco.

33. Cresco's annual sales exceed $500,000, and Cresco has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Cresco's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also

covered by the FLSA on an individual basis.

34.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

35.     This Court has personal jurisdiction over Cresco because Cresco maintains its headquarters in Cook County, Illinois.

## VENUE

36.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because Cresco resides in Cook County, Illinois.

## INTRADISTRICT ASSIGNMENT

37.     Cresco maintains its headquarters in Cook County, Illinois; therefore, this action is properly assigned to the Eastern Division.

## PARTIES

38.     Plaintiff Janice Dutcher ("Plaintiff Dutcher") is a Massachusetts resident who worked for Cresco as a non-exempt Processing Agent at Cresco's cultivation center and dispensary in Fall River, Massachusetts from January 2020 to November 2020. As a Processing Agent for Cresco, Plaintiff Dutcher regularly worked 40 or more hours per week and was paid an hourly wage, most recently at the rate of $15.00. Plaintiff Dutcher signed a consent form to join this collective action lawsuit. (Ex. A.) Plaintiff Dutcher took a brief leave during her employment period.

39.     Plaintiff Stacy Negley ("Plaintiff Negley") is a Massachusetts resident who worked for Cresco as a non-exempt Packaging Agent and Processing Agent at Cresco's cultivation center and dispensary in Fall River, Massachusetts from August 2019 to December 2020. As a Packaging

Agent and Processing Agent for Cresco, Plaintiff Negley regularly worked 40 or more hours per week and was paid an hourly wage, most recently at the rate of $15.00. Plaintiff Negley signed a consent form to join this collective action lawsuit. (Ex. B.)

40.     Plaintiffs have satisfied administrative prerequisites regarding filing this action and have received authorization from the Massachusetts Attorney General's Office to pursue this matter through a private civil lawsuit.

41.     Defendant Cresco Labs Inc. is incorporated in the Province of British Columbia and is headquartered at 400 West Erie Street, Suite 110, Chicago, Illinois 60654.

42.     Defendant Cresco Labs, LLC is an Illinois limited liability company (File Number 04569113) with its Principal Office located at 400 West Erie Street, Suite 110, Chicago, Illinois 60654.

43.     On its website, Cresco describes itself as "stewards, owners and leaders building the most trusted and fastest growing cannabis company in the world. From careful cultivation to consistent distribution, we provide a portfolio of brands thoughtfully made for every consumer." (*https://www.crescolabs.com/about-cresco/* (last visited on 03/31/2021).)

**<u>GENERAL ALLEGATIONS</u>**

A.     **<u>Cresco's Cannabis Operations</u>**

44.     Cresco is primarily engaged in the business of cultivating medical grade cannabis, manufacturing medical grade products derived from cannabis cultivation, and distributing such products to medical or adult use consumers in legalized cannabis markets.

45.     Cresco employs non-exempt Cultivation Employees who are responsible for onsite harvesting and maintenance of Cresco's cannabis gardens and for the preparation and execution of Cresco's cannabis products through the measuring, mixing, processing and packaging of product for sale at Cresco's dispensary locations.

46.     Cresco employed Plaintiffs as Cultivation Employees at its cultivation center and dispensary in Massachusetts.

47.     The similarly situated Cultivation Employees are and were employed by Cresco at its cultivation, manufacturing, and processing centers in Arizona, California, Illinois, Maryland, Massachusetts, Michigan, New York, Ohio and Pennsylvania.

48.     Cresco's Massachusetts cultivation center is divided into several work areas – the cultivation room, the kitchen, the laboratory, the packaging room, and the processing room. These areas include all the major operating areas of the cultivation center.

**B.      Cresco Required Plaintiffs and Similarly Situated Employees to Wear Company-Issued Protective Clothing and Safety Equipment during their Work Shifts**

49.     Plaintiffs and the similarly situated Cultivation Employees all shared similar job duties, job titles, training, compensation plans, working hours, job descriptions and job requirements, among other things.

50.     Due to the nature of its operations, Cresco required Plaintiffs and similarly situated employees to wear company-issued PPE during their work shifts in order to protect the cannabis and cannabis products from contamination and to comply with federal and state governmental safety, health and food regulations and mandates.

51.     Cresco required Plaintiffs and similarly situated employees to don and doff the PPE before and after their scheduled work shifts in designated locations at the worksite.

52.     Cresco provided Plaintiffs and similarly situated employees with onsite lockers and changing facilities so that they could don and doff the PPE at the worksite.

53.     Cresco prohibited Plaintiffs and similarly situated employees from donning or doffing the PPE at home.

54.     Cresco prohibited Plaintiffs and similarly situated employees from taking the PPE

home with them or otherwise removing the PPE from the worksite.

55.     Cresco furnished Plaintiffs and similarly situated employees with freshly laundered scrubs.

56.     Cresco prohibited Plaintiffs and similarly situated employees from entering the work areas—including the cultivation room, the kitchen, the laboratory, the packaging room, and the processing room—without wearing the PPE.

57.     Cresco prohibited Plaintiffs and similarly situated employees from exiting the work areas—including the cultivation room, the kitchen, the laboratory, the packaging room, and the processing room—without doffing their masks, hair nets, arm sleeves, and gloves and disposing the items in the trash bin.

58.     Cresco prohibited Plaintiffs and similarly situated employees from leaving the facility without doffing the PPE and changing into a clean pair of clothes.

59.     Plaintiffs and the similarly situated Cultivation Employees donned and doffed the same or substantially similar PPE, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room, or the processing room.

60.     Plaintiffs and the similarly situated Cultivation Employees utilized the same changing facilities to don and doff the PPE, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room, or the processing room.

61.     Plaintiffs and the similarly situated Cultivation Employees punched in and out for their shifts using the same timekeeping system, regardless of their particular job title and regardless of whether they worked in the cultivation room, the kitchen, the laboratory, the packaging room,

or the processing room.

62.     Plaintiffs and similarly situated employees used to punch in and out for their shifts near the security office using a key fob. Most recently, they punched in and out for their shifts on their personal mobile devices using the ADP application.

63.     Cresco issued identification cards to Plaintiffs and similarly situated employees, which they were required to use when entering and exiting the facility and when travelling throughout the facility.

**C.     Pre-Shift and Post-Shift Off-the-Clock Work**

64.     Cresco required Plaintiffs and similarly situated employees to don the PPE before clocking in for their scheduled work shifts and required them to do so at the worksite.

65.     Similarly, Cresco required Plaintiffs and similarly situated employees to doff the PPE after clocking out for their scheduled work shifts and required them to do so at the worksite.

66.     The mandatory pre-shift and post-shift donning and doffing process is compensable because it was an integral and indispensable part of Plaintiffs' and similarly situated employees' principal work activities. Cresco required Plaintiffs and similarly situated employees to don and doff the PPE at the worksite and wear the PPE during their work shifts in order to promote a safer and more efficient harvesting and production process and to ensure compliance with federal and state governmental safety, health and food regulations and mandates. Plaintiffs and similarly situated employees could not have completed their assigned work tasks without wearing the PPE.

67.     Before obtaining and donning the PPE, Cresco required Plaintiffs and similarly situated employees to swipe a badge to enter the building, a function that primarily benefited Cresco by allowing Cresco to monitor access to the facility and the cannabis and cannabis products.

68.     For a portion of the relevant period, before obtaining and donning the PPE, Plaintiffs and similarly situated employees had to pass a mandatory health screening procedure

11

upon entering the facility, which lasted between one to two minutes.

69.     The mandatory on-site pre-shift health screening procedure was required by Cresco to ensure that the cultivation and production of cannabis and cannabis products was free of contamination, and thus, was necessarily tied to Plaintiffs' and the similarly situated employees' work of onsite harvesting and maintenance of Cresco's cannabis gardens and preparation and execution of Cresco's cannabis products.

70.     Additionally, the on-site pre-shift health screening procedure was integral and indispensable to Plaintiffs' and the similarly situated employees' principal duties because it could not be eliminated without impairing their ability to safely harvest and produce contamination-free cannabis products.

71.     After passing the mandatory health screening procedure, Plaintiffs and similarly situated employees had to travel throughout the facility to access the PPE, including walking up a flight of stairs, riding an elevator, and/or walking throughout the facility – a process that took another one to two minutes.

72.     After traveling throughout the facility but before clocking in, Plaintiffs and similarly situated employees spent approximately 10 to 12 minutes each day walking to their lockers located in the hallway; opening their lockers; retrieving their protective shoes which were stored in their lockers; stowing their personal belongings in their lockers; walking from their lockers to a hallway clothing rack to retrieve their scrubs; walking from the hallway clothing rack to the changing room and waiting for a vacant changing room stall; donning their scrubs and protective shoes in the changing room; returning to their lockers to stow their personal clothing; walking from their lockers to their assigned work areas; and, finally, donning their masks, hair nets, arm sleeves, and gloves which were stored in bins near the work area.

73.     Cresco required Plaintiffs and similarly situated employees to don the PPE prior to punching in and before the start of their scheduled work shifts so that they could report to their assigned work areas promptly at their scheduled start times and with all the PPE on.

74.     Consequently, Plaintiffs and similarly situated employees had to arrive at the facility at least 12 to 16 minutes early to pass the mandatory health screening procedure and to complete the mandatory pre-shift donning process.

75.     Cresco allowed Plaintiffs and similarly situated employees to clock in up to five minutes early.

76.     However, it took Plaintiffs and similarly situated employees significantly longer than five minutes to complete the mandatory pre-shift donning process.

77.     Consequently, Plaintiffs and similarly situated employees had to initiate the pre-shift donning process *before* clocking in.

78.     Additionally, Cresco implemented and enforced policies causing the punch-in times for Plaintiffs and similarly situated employees to be rounded up to their scheduled start times.

79.     Consequently, even if Plaintiffs and similarly situated employees clocked in early, Cresco did not begin paying them until their scheduled start times.

80.     At the end of each shift and after clocking out, Plaintiffs and similarly situated employees spent approximately three to five minutes doffing their masks, hair nets, arm sleeves, and gloves; placing the items in a trash bin; walking to their lockers to retrieve their personal clothing; walking from their lockers to the changing room and waiting for a vacant changing room stall; doffing their scrubs and protective shoes and placing the scrubs in the changing room hamper; and, finally, walking back to their lockers to store their protective shoes and retrieve their personal belongings.

81.     These policies resulted in Plaintiffs and similarly situated employees not being paid for their mandatory pre-shift and post-shift donning and doffing activities.

82.     Since Plaintiffs and similarly situated employees regularly worked 40 or more hours per week, these policies also deprived them of overtime pay.

**D.     Meal-Period Off-the-Clock Work**

83.     Cresco promised Plaintiffs and similarly situated employees one unpaid 30-minute meal period each shift.

84.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

85.     Cresco did not provide Plaintiffs and similarly situated employees with bona fide meal periods because it required them to return to their work areas prior to the end of their unpaid meal breaks and to spend off-the-clock time retrieving and donning a fresh set of face masks, hair nets, arm sleeves, and gloves so that they could resume performing their assigned work duties promptly at the end of their scheduled lunch breaks.

86.     This policy resulted in Plaintiffs and similarly situated employees performing approximately two to three minutes of unpaid meal-period work each day.

**E.     Cresco Breached its Contractual Obligations to Pay Plaintiffs and the Cultivation Employees their Regular Hourly Rates of Pay for Each Hour Worked**

87.     In approximately January 2020, Cresco offered Plaintiff Dutcher the opportunity to

work for Cresco as an hourly Processing Agent.

88.     In approximately August 2019, Cresco offered Plaintiff Negley the opportunity to work for Cresco as an hourly employee. Plaintiff Negley worked for Cresco in that capacity as a Processing Agent and as a Packaging Agent.

89.     In consideration for Plaintiffs' work as hourly Cultivation Employees, Cresco promised to pay Plaintiffs an hourly wage for each hour they worked for Cresco.

90.     In approximately January 2020, Plaintiff Dutcher accepted Cresco's offer of employment and began working for Cresco, creating a valid contract between Cresco and Plaintiff Dutcher whereby Cresco was obligated to pay Plaintiff Dutcher her regular hourly rate of pay for each hour that she worked for Cresco, including the mandatory pre-shift, meal-period, and post-shift donning and doffing activities described herein.

91.     In approximately August 2019, Plaintiff Negley accepted Cresco's offer of employment and began working for Cresco, creating a valid contract between Cresco and Plaintiff Negley whereby Cresco was obligated to pay Plaintiff Negley her regular hourly rate of pay for each hour that she worked for Cresco, including the mandatory pre-shift, meal-period, and post-shift donning and doffing activities described herein.

92.     Throughout their employment with Cresco as hourly Cultivation Employees, Plaintiffs performed all of the work required by Cresco, including the mandatory pre-shift, meal-period, and post-shift donning and doffing activities described herein. In performing this work, Plaintiffs fulfilled all of their duties under the contracts.

93.     However, throughout Plaintiffs' entire employment with Cresco, Cresco repeatedly and systematically breached the contracts by not paying Plaintiffs their regular hourly rates of pay for the mandatory pre-shift, meal-period, and post-shift donning and doffing activities described

herein.

94.     Cresco's failure to pay Plaintiffs for each hour of work they performed and that was required of them as hourly Cultivation Employees was a material breach by Cresco.

95.     Because of Cresco's breaches, Plaintiffs were deprived of wages owed to them under the contracts, including unpaid "gap time" wages.[2]

96.     Upon information and belief, all of the other hourly Cultivation Employees who worked for Cresco had similar valid contracts with Cresco.

97.     Upon information and belief, Cresco repeatedly and systematically breached its contracts with all the other hourly Cultivation Employees it employed in the same way that it breached its contracts with Plaintiffs.

98.     Cresco's contractual promises to pay Plaintiffs' and each hourly Cultivation Employee's applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to Plaintiffs and the hourly Cultivation Employees.

99.     Plaintiffs and the hourly Cultivation Employees are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Cresco, including unpaid "gap time" wages.

100.     Plaintiffs and the hourly Cultivation Employees earned these wages at the moment they performed the off-the-clock work; and the wages were due to be paid to Plaintiffs and the hourly Cultivation Employees no later than the pay day for the period in which the off-the-clock work was performed.

---

[2] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked.

101.     Despite the fact that Plaintiffs and the hourly Cultivation Employees performed the off-the-clock work before and after their scheduled work shifts, these off-the-clock hours were not peripheral tasks for which they were not owed additional compensation. Instead, the off-the-clock work, which was performed by Plaintiffs and the hourly Cultivation Employees pursuant to Cresco's express instructions, constituted principal work activities that were integral and indispensable to their work; and Cresco was contractually obligated to pay the hourly Cultivation Employees for this time at the regular hourly rates at which they were employed.

102.     The fact that Cresco deliberately chose not to pay Plaintiffs and the Cultivation Employees for this work, and that the off-the-clock work was performed before and after the Cultivation Employees' scheduled work shifts, does not somehow relieve Cresco of its contractual obligations to pay the Cultivation Employees for this time.

103.     Cresco was contractually obligated to pay Plaintiffs and the Cultivation Employees their regular rates of pay for *all hours worked*, including hours worked before after their scheduled work shifts.

**F.     Cresco Benefitted from Plaintiffs' and the Cultivation Employees' Mandatory Pre-Shift, Meal-Period, and Post-Shift Work Activities**

104.     At all relevant times, Cresco directed and directly benefited from the mandatory pre-shift, meal-period, and post-shift work activities performed by Plaintiffs and the Cultivation Employees.

105.     At all relevant times, Cresco controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and the Cultivation Employees.

106.     At all relevant times, Cresco was able to track the amount of time Plaintiffs and the Cultivation Employees spent in connection with the mandatory pre-shift, meal-period, and post-shift work activities described herein. However, Cresco failed to do so and failed to pay Plaintiffs

and the Cultivation Employees for their pre-shift, meal-period, and post-shift work.

107.    At all relevant times, Plaintiffs and the Cultivation Employees were non-exempt employees, subject to the requirements of the FLSA and applicable state laws.

108.    At all relevant times, Cresco used its attendance and adherence policies against Plaintiffs and the Cultivation Employees in order to pressure them into performing the mandatory pre-shift, meal-period, and post-shift work activities without pay.

109.    At all relevant times, Cresco's policies and practices deprived Plaintiffs and the Cultivation Employees of wages owed for the mandatory pre-shift, meal-period, and post-shift work activities they performed. Because Plaintiffs and the Cultivation Employees regularly worked 40 hours or more per week, Cresco's policies and practices also deprived them of overtime pay.

110.    Cresco knew or should have known that the mandatory pre-shift, meal-period, and post-shift work activities performed by Plaintiffs and the Cultivation Employees was compensable under the law.

111.    Despite knowing Plaintiffs and the Cultivation Employees performed work before and after their scheduled work shifts and during their unpaid meal breaks, Cresco failed to make any effort to stop or disallow the off-the-clock work but instead suffered and permitted it to happen.

112.    Unpaid wages related to the mandatory pre-shift, meal-period, and post-shift work activities described herein are owed to Plaintiffs and the Cultivation Employees at the FLSA-mandated overtime premium of one and one-half times the regular hourly rates at which they were employed because Plaintiffs and the Cultivation Employees regularly worked 40 hours or more per week.

## FLSA COLLECTIVE ACTION ALLEGATIONS

113.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own

behalf and on behalf of:

> *All current and former non-exempt employees who worked for Cresco during the three years preceding the filing of this Complaint and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this

definition if necessary.

114.     Cresco is liable under the FLSA for, *inter alia*, failing to properly pay Plaintiffs and

the FLSA Collective.

115.     Excluded from the proposed FLSA Collective are Cresco's executives and

administrative and learned professional employees, including computer professionals and outside

salespersons.

116.     Consistent with Cresco's policy and pattern or practice, Plaintiffs and the FLSA

Collective were not paid premium overtime compensation when they worked over 40 hours in a

workweek.

117.     Cresco assigned and/or was aware of all the work that Plaintiffs and the FLSA

Collective performed.

118.     As part of its regular business practices, Cresco intentionally, willfully, and

repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited

to:

a.     Willfully failing to pay Plaintiffs and the FLSA Collective premium overtime wages for all hours worked in excess of 40 hours per workweek; and

b.    Willfully failing to record all of the time that Plaintiffs and the FLSA Collective worked for the benefit of Cresco.

119.    Cresco is aware or should have been aware that federal law required it to pay overtime premiums to Plaintiffs and the FLSA Collective for all hours worked in excess of 40 per workweek.

120.    Cresco's unlawful conduct has been widespread, repeated, and consistent.

121.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

122.    The employment relationships between Cresco and every proposed FLSA Collective member are the same. The key issue – the amount of unpaid pre-shift, meal-period, and post-shift time – does not vary substantially among the proposed FLSA Collective members.

123.    Many similarly situated current and former employees have been underpaid in violation of the FLSA and would benefit from the issuance of a Court-supervised notice of this lawsuit and the opportunity to join it.

124.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

125.    Those similarly situated employees are known to Cresco, are readily identifiable, and can be located through Cresco's records.

126.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number

of FLSA Collective members should be readily ascertainable from a review of Cresco's personnel and payroll records.

## **RULE 23 MASSACHUSETTS CLASS ACTION ALLEGATIONS**

127.  Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former non-exempt employees who worked for Cresco in Massachusetts during the applicable statutory period and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts*

(hereinafter referred to as the "Rule 23 Massachusetts Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

128.  The Rule 23 Massachusetts Class members are so numerous that joinder of all Rule 23 Massachusetts Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Massachusetts Class members. Rule 23 Massachusetts Class members should be easy to identify from Cresco's computer systems and electronic payroll and personnel records.

129.  There is a well-defined community of interest among Rule 23 Massachusetts Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Massachusetts Class members. These common legal and factual questions include, but are not limited to:

> a.  Whether Rule 23 Massachusetts Class members performed unpaid pre-shift, meal-period, and post-shift work activities, and if so, whether such work activities are compensable; and
>
> b.  Whether Rule 23 Massachusetts Class members are owed wages for time spent performing pre-shift, meal-period, and post-shift work activities, and if so, the appropriate amount thereof.

130.  Plaintiffs' claims are typical of the Rule 23 Massachusetts Class members' claims

because Plaintiffs and all other Rule 23 Massachusetts Class members suffered damages as a direct and proximate result of Cresco's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Massachusetts Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Massachusetts Class members.

131.    Plaintiffs will fully and adequately protect the Rule 23 Massachusetts Class members' interests and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel has interests that are contrary to, or conflicting with, the Rule 23 Massachusetts Class members' interests.

132.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Massachusetts Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

133.    This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Cresco has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

134.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

135.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf

and on behalf of:

> *All current and former non-exempt employees who worked for Cresco during the applicable statutory period and who were required to don and doff protective clothing or safety equipment at the worksite before and after their scheduled work shifts*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend

the putative class definition if necessary.

136.     The Rule 23 Nationwide Class members are so numerous that joinder of all Rule

23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate

there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members

should be easy to identify from Cresco's computer systems and electronic payroll and personnel

records.

137.     There is a well-defined community of interest among Rule 23 Nationwide Class

members and common questions of law and fact predominate in this action over any questions

affecting individual Rule 23 Nationwide Class members. These common legal and factual

questions include, but are not limited to:

    a.     Whether Rule 23 Nationwide Class members performed unpaid pre-shift, meal-period, and post-shift work activities, and if so, whether such work activities are compensable;

    b.     Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre-shift, meal-period, and post-shift work activities, and if so, the appropriate amount thereof; and

    c.     Whether Cresco's non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment.

138.     Plaintiffs' claims are typical of the Rule 23 Nationwide Class members' claims

because Plaintiffs and all other Rule 23 Nationwide Class members suffered damages as a direct

and proximate result of Cresco's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

139.    Plaintiffs will fully and adequately protect the Rule 23 Nationwide Class members' interests and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel has interests that are contrary to, or conflicting with, the Rule 23 Nationwide Class members' interests.

140.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

141.    This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Cresco has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

142.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates*, 559 U.S. at 398 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

## COUNT I
## VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq.*
## FAILURE TO PAY OVERTIME WAGES
### (29 U.S.C. § 216(b) Collective Action)

143.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

144.     At all times relevant to this action, Cresco was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

145.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Cresco within the meaning of 29 U.S.C. § 203(e)(1).

146.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

147.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

148.     At all times relevant to this action, Cresco "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g).

149.     At all times relevant to this action, Cresco required Plaintiffs and the FLSA Collective to perform mandatory pre-shift, meal-period, and post-shift work activities, as described herein, but failed to pay these employees the federally mandated overtime compensation for the pre-shift, meal-period, and post-shift work.

150.     The mandatory pre-shift, meal-period, and post-shift work activities performed every shift by Plaintiffs and the FLSA Collective were an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

151.     In workweeks where Plaintiffs and other FLSA Collective members worked over 40 hours, the unpaid pre-shift, meal-period, and post-shift work time, and all other overtime, should

have been paid at the federally mandated rate of one and one-half times each employee's regular hourly rate of pay, including shift differential pay, nondiscretionary incentive pay, and all other non-excludable remuneration. *See* 29 U.S.C. §§ 207(a) & (e).

152.     Cresco's violations of the FLSA were knowing and willful. Cresco knew or could have determined how long it took Plaintiffs and the FLSA Collective to perform their mandatory pre-shift, meal-period, and post-shift work. Further, Cresco could have easily accounted for and paid Plaintiffs and the FLSA Collective for these work activities but deliberately chose not to.

153.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated (i.e., double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF THE MASSACHUSETTS OVERTIME ACT, M.G.L. ch. 151 §§ 1A, 1B**
**FAILURE TO PAY OVERTIME WAGES**
**(On Behalf of the Rule 23 Massachusetts Class)**

154.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

155.     Cresco was an "employer" of Plaintiffs and the Rule 23 Massachusetts Class members, as that term is used in the Massachusetts Overtime Act.

156.     Cresco failed to pay overtime for all hours worked over 40 in a workweek to Plaintiffs and the Rule 23 Massachusetts Class members in violation of the Massachusetts Overtime Act.

157.     Due to Cresco's violations of the Massachusetts Overtime Act, Plaintiffs and the Rule 23 Massachusetts Class members have incurred harm and loss and are entitled to recover from Cresco unpaid overtime mandatorily trebled, reasonable fees, costs of the action, and pre- and post-judgment interest.

## COUNT III
## VIOLATION OF THE MASSACHUSETTS WAGE ACT, M.G.L. ch. 149 §148
## FAILURE TO PAY WAGES
## (On Behalf of the Rule 23 Massachusetts Class)

158.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

159.    Cresco was an "employer" of Plaintiffs and the Rule 23 Massachusetts Class members, as that term is used in the Massachusetts Wage Act.

160.    Cresco failed to pay wages for all hours worked in a workweek to Plaintiffs and the Rule 23 Massachusetts Class members in violation of the Massachusetts Wage Act.

161.    Due to Cresco's violations of the Massachusetts Wage Act, Plaintiffs and the Rule 23 Massachusetts Class members have incurred harm and loss and are entitled to recover from Cresco unpaid wages mandatorily trebled, reasonable fees, costs of the action, and pre- and post-judgment interest.

## COUNT IV
## BREACH OF CONTRACT
## (On Behalf of the Rule 23 Nationwide Class)

162.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

163.    At all times relevant to this action, Cresco had binding and valid contracts with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Cresco's behalf.

164.    Cresco's contractual promises to pay Plaintiffs' and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiffs and the Rule 23 Nationwide Class members.

165.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Cresco's contractual promises and performed under the contracts by doing their jobs and carrying

27

out the work they performed each shift, including the unpaid pre-shift, meal-period, and post-shift work activities required of them, accepted by Cresco, and that they performed.

166.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the mandatory pre-shift, meal-period, and post-shift work activities they performed, Cresco systematically breached its contracts with Plaintiffs and each Rule 23 Nationwide Class member.

167.    Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Cresco paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

168.    As a direct and proximate result of Cresco's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members have been damaged in an amount to be determined at trial.

### COUNT V
### UNJUST ENRICHMENT
### (On Behalf of the Rule 23 Nationwide Class)

169.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

170.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

171.    At all times relevant to this action, Cresco promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Cresco.

172.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon Cresco's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

173.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the mandatory pre-shift, meal-period, and post-shift work they

performed before and after each shift, Cresco was unjustly enriched.

174.    Plaintiffs and the Rule 23 Nationwide Class members performed mandatory pre-shift, meal-period, and post-shift work activities at the request of, without objection by, and for the benefit of, Cresco.

175.    Cresco received and accepted the pre-shift, meal-period, and post-shift work from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

176.    Upon information and belief, Cresco used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

177.    Cresco has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class members performed for Cresco's benefit, without having paid Plaintiffs and the Rule 23 Nationwide Class members for the same.

178.    Plaintiffs and the Rule 23 Nationwide Class members suffered detriment due to Cresco's failure to pay them for the mandatory pre-shift, meal-period, and post-shift work activities described herein, in that Plaintiffs and the Rule 23 Nationwide Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

179.    As a direct and proximate result of Cresco's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request judgment as follows:

a.    Certifying this action as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiffs' FLSA claim (Count I);

b.      Certifying this action as a class action (for the Rule 23 Massachusetts Class) under Fed. R. Civ. P. 23(b)(3) with respect to Plaintiffs' Massachusetts wage-and-hour claims (Counts II-III);

c.      Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts IV-V);

d.      Ordering Cresco to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers, and dates and location of employment of all FLSA Collective members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

e.      Designating Plaintiffs as the representatives of the FLSA Collective, the Rule 23 Massachusetts Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.      Declaring Cresco willfully violated the FLSA;

g.      Declaring Cresco violated Massachusetts wage-and-hour law;

h.      Declaring Cresco breached its contracts with Plaintiffs and the Rule 23 Nationwide Class members (or, in the alternative, that Cresco was unjustly enriched) by failing to pay them for the mandatory pre-shift, meal-period, and post-shift work activities described herein;

i.      Granting judgment in favor of Plaintiffs and against Cresco and awarding Plaintiffs and the FLSA Collective, the Rule 23 Massachusetts Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

k.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

l.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury under Fed. R. Civ. P. 38.

Dated: April 19, 2021                    Respectfully Submitted,

                                         /s/ *Matthew L. Turner*
                                         Matthew L. Turner
                                         Kevin J. Stoops
                                         Rod M. Johnston
                                         SOMMERS SCHWARTZ, P.C.
                                         One Towne Square, 17th Floor
                                         Southfield, Michigan 48076
                                         Phone: (248) 355-0300
                                         Email: mturner@sommerspc.com
                                         Email: kstoops@sommerspc.com
                                         Email: rjohnston@sommerspc.com

                                         Benjamin Knox Steffans (will petition for admission)
                                         Steffans Legal PLLC
                                         7 North Street, Suite 307
                                         Pittsfield, Massachusetts 01201
                                         Phone: (413) 418-4176
                                         Email: bsteffans@steffanslegal.com

                                         *Attorneys for Plaintiffs and the Putative*
                                         *Collective/Class Members*