IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JANICE DUTCHER** and **STACY NEGLEY**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**CRESCO LABS INC.** and **CRESCO LABS, LLC**,<br><br>Defendants. | Case No. 21-cv-02106<br><br>Honorable Gary Feinerman |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS CRESCO LABS, LLC AND CRESCO LABS, INC.'S MOTION TO DISMISS COUNT IV OF THE COMPLAINT**

Plaintiffs Janice Dutcher ("Plaintiff Dutcher") and Stacy Negley ("Plaintiff Negley") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants Cresco Labs, LLC and Cresco Labs, Inc.'s ("Cresco") Motion to Dismiss Count IV of the Complaint.

**PRELIMINARY STATEMENT**

On April 19, 2021, Plaintiffs, individually and on behalf of all others similarly situated, filed a Collective and Class Action Complaint (Doc. 1) ("Compl.") against Cresco, seeking damages for, *inter alia*, overtime violations under the Fair Labor Standards Act ("FLSA") and Massachusetts General Law ("MGL"). Plaintiffs also assert class action claims for common law breach of contract and unjust enrichment.

In their motion to dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6), Cresco seeks dismissal of Plaintiffs' common law breach of contract claim (Count IV) on the

ground that Plaintiffs have insufficiently pleaded the existence of a contract. For the reasons stated below, Cresco is incorrect, and its motion to dismiss pursuant to FRCP 12(b)(6) should be denied in its entirety.

## STATEMENT OF FACTS

Cresco cultivates medical grade cannabis, manufactures medical grade products derived from cannabis cultivation, and distributes such products to medical or adult use consumers in legalized cannabis markets such as Arizona, California, Illinois, Maryland, Massachusetts, Michigan, New York, Ohio and Pennsylvania. Compl. ¶¶ 2-3, 44, 47.

In order to cultivate, manufacture, and distribute its cannabis products, Cresco employs non-exempt employees – including Cultivation Agents, Edibles Agents, Gardening Agents, Kitchen Agents, Manufacturing Agents, Packaging Agents and Processing Agents (the "Cultivation Employees") – who are responsible for onsite harvesting and maintenance of Cresco's cannabis gardens and for the preparation and execution of Cresco's cannabis products through the measuring, mixing, processing and packaging of product for sale at Cresco's dispensary locations. *Id*. ¶¶ 4, 45. Cresco employed Plaintiffs as hourly Packaging and Processing Agents at its cultivation center and dispensary in Fall River, Massachusetts. *Id*. ¶¶ 38-39, 46.

Cresco required Plaintiffs and similarly situated Cultivation Employees to wear company-issued protective clothing and safety equipment – consisting of protective shoes, scrubs, masks, hair nets, arm sleeves, and gloves ("the PPE") – during their work shifts in order to protect the cannabis and cannabis products from contamination and to comply with federal and state governmental safety, health and food regulations and mandates. *Id*. ¶¶ 7-8, 50.

Cresco required Plaintiffs and the Cultivation Employees to don the PPE at the worksite prior to punching in and before the start of their scheduled work shifts so that they could report to

their assigned work areas promptly at their scheduled start times and with all the PPE on. *Id*. ¶¶ 9, 18, 63, 73. Similarly, at the end of each shift and after punching out, Plaintiffs and the Cultivation Employees had to doff the PPE before leaving the facility. *Id*. ¶¶ 10, 24, 65, 80. These policies resulted in Plaintiffs and the Cultivation Employees not being paid for their mandatory donning and doffing activities. *Id*. ¶¶ 26, 81. Since Plaintiffs and the Cultivation Employees regularly worked 40 or more hours per week, these policies also deprived them of overtime pay. *Id*. ¶¶ 27, 82.

Plaintiffs assert FLSA collective action claims for unpaid overtime wages (Count I), Massachusetts class action claims for unpaid overtime and regular wages under the MGL (Counts II-III), and nationwide class action claims for common law breach of contract and unjust enrichment (Counts IV-V). *Id*. ¶¶ 143-179.[1] The pertinent allegations regarding Plaintiffs' breach of contract claim are as follows:

- In approximately January 2020, Cresco offered Plaintiff Dutcher the opportunity to work for Cresco as an hourly Processing Agent. *Id*. ¶ 87.

- In approximately August 2019, Cresco offered Plaintiff Negley the opportunity to work for Cresco as an hourly employee. Plaintiff Negley worked for Cresco in that capacity as a Processing Agent and as a Packaging Agent. *Id*. ¶ 88.

- In consideration for Plaintiffs' work as hourly Cultivation Employees, Cresco promised to pay Plaintiffs an hourly wage for each hour they worked for Cresco. *Id*. ¶ 89.

- In approximately January 2020, Plaintiff Dutcher accepted Cresco's offer of employment and began working for Cresco, creating a valid contract between Cresco and Plaintiff Dutcher whereby Cresco was obligated to pay Plaintiff Dutcher her regular hourly rate of pay for each hour that she worked for Cresco, including the mandatory donning and doffing activities described in the Complaint. *Id*. ¶ 90.

- In approximately August 2019, Plaintiff Negley accepted Cresco's offer of employment and began working for Cresco, creating a valid contract between Cresco and Plaintiff Negley whereby Cresco was obligated to pay Plaintiff Negley her regular hourly rate of

---

[1] Plaintiffs' unjust enrichment claim (Count V) is pled in the alternative to Plaintiffs' breach of contract claim (Count IV) pursuant to FRCP 8(d)(2)-(3).

- pay for each hour that she worked for Cresco, including the mandatory donning and doffing activities described in the Complaint. *Id*. ¶ 91.

- Throughout their employment with Cresco as hourly Cultivation Employees, Plaintiffs performed all of the work required by Cresco, including the mandatory donning and doffing activities described in the Complaint. In performing this work, Plaintiffs fulfilled all of their duties under the contracts. *Id*. ¶ 92.

- However, throughout Plaintiffs' entire employment with Cresco, Cresco repeatedly and systematically breached the contracts by not paying Plaintiffs their regular hourly rates of pay for the mandatory donning and doffing activities described in the Complaint. *Id*. ¶ 93.

- Cresco's failure to pay Plaintiffs for each hour of work they performed and that was required of them as hourly Cultivation Employees was a material breach by Cresco. *Id*. ¶ 94.

- Because of Cresco's breaches, Plaintiffs were deprived of wages owed to them under the contracts, including unpaid "gap time" wages. *Id*. ¶ 95.[2]

## LAW AND ARGUMENT

**A.    Legal Standard for Motion to Dismiss**

When evaluating a Rule 12(b)(6) motion to dismiss, the court must "accept[ ] all well-pleaded facts as true and draw[ ] all reasonable inferences in favor of the ... non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing FRCP 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To state a claim for relief, a complaint must provide more than 'abstract recitations of the elements of a cause of action or

---

[2] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their compensation is averaged across their actual time worked.

4

conclusory legal statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Charleston v. Bd. of Trustees of U. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013).

**B.      Massachusetts Law Governs Plaintiffs' Individual Breach of Contract Claims**

Cresco argues that Massachusetts common law should apply to Plaintiffs' individual breach of contract claims for the purposes of this motion. *See* Doc. 20 at 4-5. Plaintiffs agree. Because the parties agree that Massachusetts law should govern and because the choice of Massachusetts law is entirely reasonable, the Court should apply Massachusetts law to Plaintiffs' individual breach of contract claims. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

**C.      Plaintiffs Sufficiently Pleaded a Breach of Contract Claim Under Massachusetts Law**

Under Massachusetts law, "[t]o demonstrate a breach of contract, the plaintiff must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 32 (1st Cir. 2016) (internal quotation marks and citations omitted); *Columbia Plaza Associates v. N.E. U.*, 104 N.E.3d 682 (Mass. App. 2018) ("To survive a motion to dismiss on a breach of contract claim, the plaintiff must establish (1) an oral or written agreement, express or implied, (2) supported by valid consideration; (3) the plaintiff was ready, willing, and able to perform; (4) breach by the defendant; and (5) damage to the plaintiff.") (citation omitted); *Logie v. Massachusetts Bay Transportation Auth.*, 323 F. Supp. 3d 164, 174 (D. Mass. 2018). To overcome

5

a Rule 12(b)(6) challenge,

> Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with "substantial certainty," the specific contractual promise the defendant failed to keep. *See Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) ("In a contract action, this irreducible ['substantial certainty'] minimum requires the pleader to 'explain what obligations were imposed on each of the parties by the alleged contract.'") (citations omitted); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194-95 (1st Cir. 1996) (holding that "[c]onclusory statements that 'Hasbro and its executives failed to meet their contractual requirement,' are insufficient to satisfy the pleading requirements"); *Williams v. Astra USA, Inc.*, 68 F. Supp.2d 29, 37 (D. Mass. 1999).

*Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007); *see also Alicea v. Machete Music*, 744 F.3d 773, 783 (1st Cir. 2014); *Driscoll v. Simsbury Assocs., Inc.*, No. 17-CV-12373-ADB, 2018 WL 2139223, at *5 (D. Mass. May 9, 2018).

The allegations of the Complaint readily meet this standard. Plaintiffs specifically and clearly allege that in August 2019 and January 2020, Cresco offered them the opportunity to work for Cresco as hourly employees; that Cresco promised to pay Plaintiffs an hourly wage for each hour they worked for Cresco; that Plaintiffs accepted Cresco's offers of employment and began working for Cresco as hourly Processing/Packaging Agents at Cresco's cultivation center and dispensary in Fall River, Massachusetts; that Plaintiffs fulfilled all of their duties under the contracts by performing all of the work required by Cresco, including the off-the-clock donning and doffing activities described in the Complaint; that Cresco repeatedly and systematically breached the contracts by failing to pay Plaintiffs their regular hourly wage rates for the off-the-clock donning and doffing activities described in the Complaint; and that Cresco's alleged breaches deprived Plaintiffs of wages owed to them under the contracts, including unpaid "gap time" wages. Compl. ¶¶ 87-95. This is sufficient to state a breach of contract claim at the pleading stage.

In *Gonpo v. Sonam's Stonewalls & Art, LLC*, 3:16-CV-40138-MGM, 2017 WL 9673710,

at *21 (D. Mass. Dec. 14, 2017), the terms of the alleged contracts were similarly straightforward—the plaintiffs alleged that they worked as stonemasons/construction workers for defendants, defendants agreed to pay them certain hourly rates, and defendants failed to pay them at their promised rates for all of the hours they worked. This was sufficient to state a breach of contract claim under Massachusetts law. *Id*.

Curiously, Cresco argues that Plaintiffs' breach of contract allegations are akin to the plaintiffs' allegations in *Squeri v. Mt. Ida College*, which the court ultimately dismissed for failure to state a claim. CV 18-12438-RGS, 2019 WL 2249722, at *5 (D. Mass. May 24, 2019). *Squeri* is factually distinguishable insofar as it involved a breach of contract claim in the context of remitting tuition payments to an academic institution in exchange for an education. *Id*. The plaintiffs' contract pleadings were only that they "applied for admission to Mount Ida," they were each accepted, and that "a contract was formed." *Squeri v. Mt. Ida College*, 954 F.3d 56, 71 (1st Cir. 2020). Notably, they did not allege the terms of any such contract. *Id*.

Here, unlike *Squeri*, Plaintiffs describe the specific terms of the contracts, including Cresco's obligations to pay Plaintiffs their regular hourly pay rates for all hours worked and Cresco's failure to keep its contractual promises by failing to pay Plaintiffs for the mandatory donning and doffing activities described in the Complaint. Compl. ¶¶ 87-95; *see Hogan v. Teamsters Loc. 170*, 495 F. Supp. 3d 52, 58 (D. Mass. 2020) (explaining that the complaint must "at least" identify "what obligations were imposed on each of the parties by the alleged contract" and describe with "substantial certainty the specific contractual promise the defendant failed to keep" (internal quotation marks and citations omitted)). Notably, unlike *Squeri*, Plaintiffs also describe the approximate dates that the contracts were formed. Compl. ¶¶ 88, 90-91.

The factually dissimilar opinions relied upon by Cresco include numerous employment

opinions dismissing breach of contract claims premised on nothing more than the *mere existence* of an employment relationship. *See, e.g., Driscoll*, 2018 WL 2139223, at *5; *Madden v. Ascensus College Sav. Recordkeeping Services, LLC*, CV 20-10565-FDS, 2021 WL 231298, at *4 (D. Mass. Jan. 22, 2021). These cases are factually distinguishable insofar as the plaintiffs never described the purported contracts and never explained the specific contractual promises that the defendants breached.

Cresco's reliance on *Driscoll* is particularly amusing insofar as the plaintiff *failed to even assert that there was a contract*. 2018 WL 2139223, at *5. Instead, the complaint stated only that the defendant employed the plaintiff and that she should have received paid time off which she did not receive. *Id*. To the extent that the plaintiff was attempting to argue that a contract existed simply by virtue of her employment, she cited no legal authority in support of that proposition. *Id*. Here, unlike *Driscoll*, Plaintiffs' breach of contract claims are premised not on the mere existence of an employment relationship, but on Cresco's *express promise* (and subsequent failure) to pay Plaintiffs their regular hourly wage rates for all hours worked, including the off-the-clock donning and doffing activities described in the Complaint. Compl. ¶¶ 87-95.

Cresco's reliance on *Madden* is equally amusing. The actual alleged contract at issue in *Madden* was "a matter of substantial confusion." 2021 WL 231298, at *4. The complaint simply alleged that plaintiff's "employment with [defendant] constituted a contractual relationship" and that "[defendant] breached the contract of employment by terminating the [plaintiff] in retaliation for her raising concerns about the company's regulatory compliance" and "by not providing any payment or documentation of the stock options [plaintiff] exercised." *Id.*, at *2, 4-5. Notwithstanding the allegations in the complaint, the *Madden* plaintiff rejected defendant's characterization of the alleged contract as an employment contract, contending instead that it was

8

a contract concerning stock options and nothing more. *Id.*, at *5. It thus appeared that the plaintiff intended to allege merely the existence and breach of a contract concerning her stock options. *Id.* It was unclear how a failure to provide payment or documentation upon the exercise of stock options could result, as the complaint alleged, in contractual damages such as lost wages, lost benefits, and an unpaid bonus. *Id.* In short, *Madden* involved a confused plaintiff and a peculiar set of allegations that have no application to the facts at hand.

Remarkably, Cresco misstates Massachusetts law by arguing that, "Plaintiffs' allegations describe the textbook attributes of at-will employment, the hallmark of which is the *absence* of a contact between the employer and employee." Doc. 20 at 8 (citing cases) (emphasis in original). To the contrary, under Massachusetts law, "an at-will employment relationship encompasses an agreement by the employee to perform specified work and an agreement by the employer to pay for the work performed." *Gasior v. Massachusetts Gen. Hosp.*, 846 N.E.2d 1133, 1137 n.7 (Mass. 2006) (noting that the Restatement (Second) of Contracts § 33 comment d (1981) "suggests that an at-will employment relationship is a form of contract."). Plaintiffs have alleged that they had such a relationship with Cresco. They worked as hourly Cultivation Employees for Cresco, Cresco agreed to pay them an hourly wage for each hour worked, and Cresco breached the contracts by failing to pay them for all the hours they worked, namely, the mandatory donning and doffing activities described in the Complaint. Compl. ¶¶ 87-95.

Nevertheless, Cresco argues that Massachusetts courts have routinely held that pleading the existence of an employment relationship without more is insufficient to allege a viable breach of contract claim. Doc. 20 at 8-9 (citing cases). This misses the point. The at-will employment relationship between Plaintiffs and Cresco was accompanied by an *express promise* on the part of Cresco to pay Plaintiffs a regular hourly wage for each hour that they worked for Cresco as hourly

9

Cultivation Employees – that is, Cresco specifically contracted with Plaintiffs to pay them an hourly wage for all hours worked. Compl. ¶ 89. Thus, Plaintiffs have adequately pleaded a breach of contract claim against Cresco. *See Cabi v. Boston Children's Hosp.*, 161 F. Supp. 3d 136, 163 (D. Mass. 2016) (denying defendants' motion to dismiss plaintiffs' breach of contract claim, holding that "the only 'agreement' upon which Plaintiffs attempt to rely that survives this motion to dismiss is BCH's promise to pay Cabi's and Mert's salaries and miscellaneous expenses in exchange for, *inter alia*, Plaintiffs' discretion regarding the ongoing investigations. As to this promise to pay salaries and expenses, Plaintiffs have also satisfied the other elements of a breach of contract claim.").

In a factually analogous case, the First Circuit held that allegations that plaintiffs provided their labor and services in a specified role for defendants in exchange for an agreed upon hourly pay rate for all hours worked, coupled with allegations that through timekeeping and payroll policies detailed in the complaint defendants breached the agreements and/or promises to pay all wages due, was sufficient to state a Massachusetts common law breach of contract claim. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 57 (1st Cir. 2013). The Court noted that while the factual allegations were relatively simple, so were the elements of a claim sounding in contract. *Id*. Thus, the Court saw "no need to demand more specificity when the core assertion is obvious enough." *Id*.

Similarly, in *Spears v. Miller*, No. 1683, 2006 WL 2808145, at *3 (Mass. App. Div. Sept. 26, 2006), the Massachusetts Appellate Division permitted a common law breach of contract claim where the plaintiffs' complaint, although silent with respect to the precise employment arrangements, alleged that the defendant "agreed to pay" them "legally mandated overtime pay." The core of the allegation was that the defendant *agreed* to pay overtime; that is, the defendant

10

specifically contracted with the plaintiffs as to that issue. *Id*.

By contrast, in *Doyle v. Hasbro,* 103 F.3d 186, 195 (1st Cir. 1996), the First Circuit held that the allegation that "[defendant] and its executives failed to meet their contractual requirement" was insufficient to state a claim. The Court observed that the amended complaint had failed to state the nature of the alleged contract with any specificity, since among other things, there was no presentation of the terms of the contract or its duration, nor explained what obligations were imposed. *Id*.

In light of these authorities, this Court should conclude that Plaintiffs have provided a necessary factual predicate showing more than a possible entitlement to relief. Plaintiffs allege that Cresco employed them as hourly Processing/Packaging Agents, promised to pay them a regular hourly wage for all hours worked in consideration for their work as hourly employees, but then breached its promises by failing to pay Plaintiffs for the off-the-clock donning and doffing activities due to timekeeping and payroll policies detailed in the Complaint. Compl. ¶¶ 87-95. All told, the critical elements of a breach of contract claim—a valid and binding contract, breach, and damages—are present.

Nevertheless, Cresco disingenuously argues that Plaintiffs have pleaded "no details" about the formation of any contract or the terms of any alleged contract. Doc. 20 at 9. To the contrary, the Complaint spends 23 paragraphs describing, in detail, the terms of the alleged contracts, how and when the contracts were formed, the obligations imposed on the parties by the contracts, how Cresco breached the contracts, and the damages suffered by Plaintiffs because of Cresco's breaches. Compl. ¶¶ 87-103, 163-168. To the extent that Cresco argues that Plaintiffs were obligated to plead specific details about who made the alleged offers or promises or the negotiations surrounding the formation of the alleged contracts, Doc. 20 at 9, it cited no legal

11

authority in support of that proposition. Like *Manning, supra*, there is "no need to demand more specificity when the core assertion is obvious enough." 725 F.3d at 57.

In *Ashcroft,* 556 U.S. at 678, and *Twombly,* 550 U.S. at 556, the Supreme Court retreated from the historic pleading standard that it had previously established in *Conley v. Gibson,* 355 U.S. 41, 45-48 (1957), and replaced it with a standard centered on plausibility. From this perspective, Plaintiffs have pled facts that are not only consistent with Cresco's liability, but those facts cross the line from possibility to plausibility. In context, Plaintiffs have succeeded in setting forth a plausible breach of contract claim. For these reasons, Cresco's motion to dismiss must be denied.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Cresco's motion to dismiss pursuant to FRCP 12(b)(6) in its entirety.

Dated: July 6, 2021

Respectfully Submitted,

/s/ *Rod M. Johnston*
Matthew L. Turner
Kevin J. Stoops
Rod M. Johnston
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: mturner@sommerspc.com
Email: kstoops@sommerspc.com
Email: rjohnston@sommerspc.com

Benjamin Knox Steffans (will petition for admission)
Steffans Legal PLLC
7 North Street, Suite 307
Pittsfield, Massachusetts 01201
Phone: (413) 418-4176
Email: bsteffans@steffanslegal.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on July 6, 2021, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Rod M. Johnston*